# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

DOROTHY MCCULLOUGH,

               Plaintiff,

     v.

UCFW LOCAL 152 RETAIL MEAT
PENSION FUND,

               Defendant.

Civil No. 17-6578 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

DANIEL JOEL SIEGEL
LAW OFFICES OF DANIEL J SIEGEL LLC
66 WEST EAGLE RD
SUITE 1
HAVERTOWN, PA 19083

     *Attorney for Plaintiff Dorothy McCullough.*

FREDERICK M. MARX
SLEVIN & HART, P.C.
1625 MASSACHUSETTS AVENUE, NW
SUITE 450
WASHINGTON, DC 20036

STEVEN J. BUSHINSKY
W. DANIEL FEEHAN, III
O'BRIEN, BELLAND & BUSHINSKY, LLC
1526 HADDONFIELD-BERLIN ROAD
CHERRY HILL, NJ 08003

     *Attorneys for Defendant UCFW Local 152 Retail Meat Pension Fund.*

**HILLMAN, District Judge**

This is an Employee Retirement Income Security Act ("ERISA") case concerning the interpretation of a provision of an ERISA plan as it relates to Social Security statutes and regulations. Presently before the Court is Plaintiff Dorothy McCullough's Motion for Summary Judgment and Defendant UCFW Local 152 Retail Meat Pension Fund's (the "Fund") Cross-Motion for Summary Judgment. For the reasons that follow, this Court will grant, in part, and deny, in part, Plaintiff's Motion for Summary Judgment and grant, in part, and deny, in part, Defendant's Cross-Motion for Summary Judgment.

**BACKGROUND**

The Court takes its facts from the parties' statements of material facts.[1] Plaintiff was an employee of Acme Markets, Inc. ("Acme") and a member of a union, UCFW. Plaintiff began her employment at Acme on October 29, 1986. In 2011, she sustained her first work-related injury. In 2011 and 2012, Plaintiff's injury worsened to the point that she could no longer work the

---

[1] The Court notes Plaintiff has not technically complied with Local Rule of Civil Procedure 56.1. This rule serves a vital function in the Court's consideration of summary judgment motions. Here, despite Plaintiff's non-compliance, Defendant has responded so that the Court is able to determine the facts in dispute. Defendant requests this Court to deny Plaintiff's Motion for Summary Judgment on these grounds. The Court declines to do so and will consider the merits of the action. Plaintiff's counsel is reminded of the obligation to comply with all Court rules or risk procedural defaults.

light-duty job to which she had been assigned. Plaintiff left Acme in December 2012. At that time, Plaintiff also filed an application for Social Security Disability Benefits ("SSDB"), claiming she was disabled as defined by the Social Security Act. The Social Security Administration ("SSA") determined that Plaintiff was disabled as of January 2013 via a Notice of Award on April 27, 2013 (the "Notice"). The Notice explained that her SSDB would begin in June 2013 after the statutory waiting period had elapsed.

Plaintiff returned to work at Acme on August 13, 2013. She worked at Acme until March 3, 2014 when she sustained a second work-related injury. Plaintiff retired from Acme on April 21, 2014 when she received short-term disability benefits. Plaintiff asserts that she returned to Acme under a "period of trial work" pursuant to 42 U.S.C. § 422(c).[2] Plaintiff did not lose her disability status or SSDB during that time period. But, during that time Plaintiff worked approximately forty-hour work weeks at Acme. As of October 25, 2016, a letter from the SSA shows Plaintiff was still entitled to monthly SSDB. Plaintiff officially retired from Acme on March 16, 2016.

---

[2] Defendant disputes this, alleging it is a factual dispute. It is not. The parties agree that Plaintiff worked between August 2013 and April 2014. How that work is designated per the Social Security Act and implementing regulations is a question of law, not fact.

Plaintiff was a participant in a pension plan administered by Defendant (the "Plan"). The Plan is governed by ERISA. A part of the Plan provided participants with a Disability Retirement Pension ("DRP") if the participant met certain requirements. Plaintiff applied for a DRP on June 7, 2016, stating her effective retirement date was March 16, 2016. (ECF No. 22, Administrative R. FUND0005.)[3]

The Plan states the following concerning whether a member may qualify for a DRP:

> A Participant who incurs a "Total and Permanent Disability" (as defined in this Section) and who has accumulated ten (10) or more years of Benefit Credit in accordance with the provisions of Article II, shall be eligible for a Disability Retirement Pension; provided, however, a Participant who incurs a "Total and Permanent Disability" (as defined in this Section) who completes one (1) or more hours of service on or after February 1, 1997 shall be eligible for a Disability Retirement Pension if such Participant has accumulated ten (10) or more years of Vesting Credit in accordance with the provisions of Article III. A Participant shall be considered to have sustained a Total and Permanent Disability if he is disabled under the definition of disability used to determine eligibility for disability benefits under the Federal Social Security Act and has been awarded a disability pension under said Act. In order to establish for Plan purposes the award of such disability pension by the Social Security Administration, the Participant must furnish to the Trustees a Certificate of Award from the Social Security Administration with a Date of Entitlement within twenty-four (24) months after the Participant's last day worked for an Employer, and the Participant must have been continuously disabled from the last day of paid employment to the Date of

---

[3] Hereafter, the Court will refer to the Administrative Record filed by Defendant solely by the "FUND" stamp.

4

Entitlement stated therein. Disability shall be considered Permanent and a Participant shall be eligible for retirement upon the expiration of five (5) full months following the date of disablement; provided, however, the Participant shall not begin to receive his Disability Retirement Pension until the first day of the month following the expiration of six (6) full months from his date of disablement.

(FUND0069.)

The Plan states the following concerning termination of a DRP:

Payment of a Disability Retirement Pension shall be terminated:

(a) If and when the Pensioner engages in any regular gainful occupation or employment for remuneration or profit deemed significant by the Trustees under uniform nondiscriminatory rules, except for purposes of rehabilitation.

(b) If and when the Pensioner has sufficiently recovered to resume his regular gainful occupation or any other employment for remuneration or profit.

(c) If and when the Social Security Administration shall suspend the disability pension of the Pensioner previously awarded under Social Security.

(FUND0069.)

The Board of Trustees of the Fund (the "Trustees") have "the sole and absolute discretion to determine eligibility under the Plan and to construe and interpret provisions of the Plan." (FUND0093.) After review by the Trustees, the Fund sent Plaintiff a letter dated July 8, 2016 awarding Plaintiff a DRP solely for the month of July 2013. (FUND0006-7.) In that

5

letter, the Trustees determined that Plaintiff qualified for a DRP and that the six-month waiting period allowed Plaintiff to be paid a DRP effective July 1, 2013. However, because Plaintiff returned to work at Acme starting in August 2013, the Trustees determined that they must terminate Plaintiff's DRP under subsection (a) or (b) of the Plan's DRP provisions.

Plaintiff appealed this decision on July 18, 2016. (FUND0008-0010.) In it, Plaintiff argued that she was "injured again at work" as of March 3, 2014, that she was currently entitled to a DRP, and that she was "entitled to back pension pay from the date [she] was awarded Social Security Disability." (FUND0008.) In that letter, Plaintiff appears to state she is still receiving SSDB. (FUND0009 ("I was forced onto Medicare they just take it out of my Social Security Disability Check.").)

On September 16, 2016, the Trustees denied Plaintiff's appeal. (FUND0026-30.) Again, the Trustees based their decision on the fact that Plaintiff returned to work in August 2013 and advised Plaintiff her status "as 'Totally and Permanently Disabled[]' under the Federal Social Security Act[] ended when [she] resumed employment on August 13, 2013." (FUND0029.) Defendant advised Plaintiff that she needed to request a new determination from the SSA to regain eligibility for a DRP. (FUND0029.)

On November 30, 2016, Plaintiff's current counsel drafted a letter to the Fund requesting reconsideration of their denial. (FUND0031-33.)  In it, Plaintiff argued she has been deemed disabled by the SSA since January 2013 and that her return to work was under a "trial work period" that in no way affected her disability status or eligibility for SSDB.  The Trustees responded by letter of May 5, 2017 stating "[t]he Plan does not provide an exception for trial work periods under Social Security Administration rules."  (FUND0046-47.)  Further, it stated "once [Plaintiff's] 2013 Disability Benefit terminated, it could not be reinstated unless she suffered a subsequent disability for which she received a separate disability award from the Social Security Administration."  (FUND0047.)

Thereafter, Plaintiff filed her complaint on July 13, 2017 in the United States District Court for the Eastern District of Pennsylvania.  On Plaintiff's Motion to Transfer (based on a forum selection clause), Judge Robert F. Kelly transferred the matter to this Court for disposition.  On April 26, 2018, Plaintiff filed the instant Motion for Summary Judgment.  On May 24, 2018, Defendant filed its response as well as its Cross-Motion for Summary Judgment.  Plaintiff filed an opposition brief.  The parties agree that this is merely a review of the administrative record and that the case is governed by ERISA.

Accordingly, these two motions have been fully briefed and are ripe for adjudication.

## ANALYSIS

### A.    Subject Matter Jurisdiction

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

### B.    Standard of Review

The parties agree this Court should review the decision of the Fund on the basis of the administrative record before it. The parties agree the standard of review is abuse of discretion, which is sometimes referred to as "arbitrary and capricious" in the ERISA context.[4]  The Court finds the proper standard of review is for abuse of discretion by Defendant.

All agree, this is an action under 29 U.S.C. § 1132(a)(1)(B).  (Pl.'s Compl. ¶ 3; Def.'s Cross-Mtn. for Summ. J. 11.)  When a claim is brought pursuant to 29 U.S.C. § 1132(a)(1)(B), a Court must first determine whether the plan under review "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch,

---

[4] In Plaintiff's Motion for Summary Judgment, she asserts a heightened standard of review is required in this case.  (Pl.'s Mot. for Summ. J. 6.)  However, in her later opposition, Plaintiff concedes that the abuse of discretion standard of review is appropriate.  (Pl.'s Opp'n Br. 9.)  Because Plaintiff concedes this standard is correct, this Court will not consider whether a heightened standard is appropriate.

489 U.S. 101, 115 (1989). Here, the Plan explicitly states that "the Trustees shall have the sole and absolute discretion to determine eligibility for benefits under the Plan and to construe and interpret the provisions of the Plan . . . ." (FUND0093.) Therefore, review is not de novo, but for abuse of discretion. Firestone Tire & Rubber Co., 489 U.S. at 115.

Under this standard of review, "the Court's role is not to interpret ambiguous provisions de novo, but rather to analyze whether the plan administrator's interpretation of the document is reasonable." Connor v. Sedgwick Claims Mgmt. Servs., 796 F. Supp. 2d 568, 580 (D.N.J. 2011) (internal quotation marks omitted). An administrator's decision is only considered an abuse of discretion "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Hocknell v. Metro. Life Ins. Co., 276 F. Supp. 3d 292, 295 (D.N.J. 2017). The scope of review is narrow, and "the court is not free to substitute its own judgment for that of the plan administrator in determining eligibility for plan benefits." Id. (citing Connor, 796 F. Supp. 2d at 579). "[T]he plaintiff retains the burden to prove that he is entitled to benefits, and that the plan administrator's decision was arbitrary and capricious." Id. at 296. This Court will examine the parties' motions under this standard of review.

**C.    Cross-Motions for Summary Judgment Standard**

As this Court has stated before "[s]ummary judgment is appropriate where the Court is satisfied that the materials in the record . . . demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hocknell v. Metro. Life Ins. Co., 276 F. Supp. 3d 292, 295 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986)); FED. R. CIV. P. 56(a). When the Court is confronted with cross-motions for summary judgment, "judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." Id. (citing Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted)).

### D.    The Motions for Summary Judgment

The central issue in this case is the interpretation of the DRP provisions of the Plan and the procedures of the SSA as they relate to a finding of disability, SSDB, and a "period of trial work." The parties' central arguments are relatively straightforward. Plaintiff asserts she has been disabled pursuant to the SSA since January 2013 and receiving SSDB since June 2013. Even though she returned to work for a period of approximately eight months, this was a period of "trial work," which did not alter her disability status or entitlement to SSDB. For that reason, Plaintiff argues she should have received a DRP not only for July 2013 (the time between the

waiting period under the Plan and her brief return to work), but also starting again in May 2014, the first of the month after which she completely stopped work at Acme.[5]

Defendant argues Plaintiff's return to work in August 2013 terminated her DRP. Once it was terminated, according to Defendant, Plaintiff was required by the Plan to present a new Certificate of Award from the SSA for a new disability to be eligible again for a DRP. Defendant argues SSA rules and regulations concerning trial work are irrelevant, and that the Court should solely be concerned with the interpretation of the Plan.

Plaintiff has brought a 29 U.S.C. § 1132(a)(1)(B) claim. Since the claim is to enforce benefits due under an ERISA plan, the claim is governed, in part, by the interpretation of what the Plan provides. The Court notes that neither party challenges whether Plaintiff was disabled under the SSA or whether she qualified for DRP as of July 1, 2013. But, Plaintiff does challenge the following:

- Whether the DRP eligibility and termination provisions are ambiguous;

---

[5] Plaintiff doses not delineate her exact request in her briefing. However, it appears this was the request made to Defendant and this is the request Defendant understood to be made by Plaintiff.

- Whether work under a "period of trial work" allows
  Defendant to terminate a grant of DRP; and

- Whether Plaintiff was required to submit a new Notice of
  Award to be eligible to receive DRP after it was
  terminated.

The Court will examine each of these questions in turn and
consider the parties' arguments in their competing motions.

    a. <u>Whether the DRP Provisions are Ambiguous</u>

Plaintiff makes multiple arguments concerning the
interpretation of the terms of the Plan.  First, the Court will
address Plaintiff's argument concerning the lack of the word
"and" or "or" between subsections (a), (b), and (c).  Second,
the Court will address Plaintiff's remaining arguments which
allege ambiguity in various other parts of the Plan's DRP
provisions.  Plaintiff argues that the omission of the word "or"
between subsections (a), (b), and (c) renders the Plan ambiguous
as to whether all or only one of these conditions must be met
before Defendant could terminate Plaintiff's DRP.  Plaintiff
argues if subsections (a), (b), and (c) were all necessary
before termination, then it would be contrary to the Plan to
have terminated Plaintiff's DRP.  Defendant argues the Plan is
not ambiguous and that the Trustee's interpretation of these
conditions as disjunctive is reasonable.

"The determination of whether a term is ambiguous is a question of law." Taylor v. Cont'l Grp. Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991) (citing Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)). A term of an ERISA plan is ambiguous if "it is subject to reasonable alternative interpretations." Id. (citing Mellon Bank, N.A., 619 F.2d at 1011). If the Court determines a term is ambiguous, "interpretation of [an] ambiguous plan provision[] is a question of fact." Id.

The Court agrees with Defendant: subsections (a), (b), and (c) are not ambiguous because Plaintiff has presented no reasonable alternative interpretations. In other words, there is only one reasonable interpretation, that of Defendant. For context, the Court lists the conditions again here:

> (a) If and when the Pensioner engages in any regular gainful occupation or employment for remuneration or profit deemed significant by the Trustees under uniform nondiscriminatory rules, except for purposes of rehabilitation.

> (b) If and when the Pensioner has sufficiently recovered to resume his regular gainful occupation or any other employment for remuneration or profit.

> (c) If and when the Social Security Administration shall suspend the disability pension of the Pensioner previously awarded under Social Security.

(FUND0069.)

The use of "if and when" and a period in subsections (a),
(b), and (c) clearly denotes that each condition is a separate
and sufficient basis for termination.  In other words, "if and
when" either subsection (a), (b), or (c) is met, Defendant may
terminate a DRP.  While use of the word "or" would be better
here, it is not necessary to understand the plain and ordinary
meaning of the provision.  Defendant is also correct that
reading the Plan to require each subsection to be met – as
Plaintiff proposes – would render parts of (a) or (b)
superfluous, as both require "regular gainful occupation" or
"employment for remuneration or profit."  (FUND0069).  The fact
that (a) is broader than (b) – with (a) allowing termination of
a DRP if an individual "engages in any regular gainful
occupation" and (b) stating "his regular gainful occupation" –
would also suggest that part of the language in (b) would be
redundant under Plaintiff's conjunctive reading.  This Court
finds there is no ambiguity.  Accordingly, this Court finds
Defendant's interpretation of the Plan allowing termination of a
DRP if any of the subsections is met was not an abuse of
discretion.

Plaintiff also makes several other arguments concerning
these subsections and the DRP provisions overall.  Plaintiff
argues (1) subpart (a) "places too much discretion in the
'Trustees' to determine the definition of 'gainful employment'";

(2) subpart (a) does not state "what uniform nondiscriminatory rules" apply; (3) subparts (a) and (b) "do not consider the unique circumstances here" where Plaintiff returned to work and was injured a second time; (4) the conditions are unduly vague or "subject to selective and/or discriminatory application"; and (5) the DRP provisions do not allow for a period of trial work. (Pl.'s Mot. for Summ. J. 15.)

These are not cognizable, because Plaintiff has not brought a claim for reformation of the Plan, but to enforce it. See Shah v. Horizon Blue Cross Blue Shield of N.J., No. 17-cv-632 (NLH/AMD), 2018 U.S. Dist. 49996, at *8-10 (D.N.J. Mar. 27, 2018) (citing CIGNA Corp. v. Amara, 563 U.S. 421, 435-36 (2011)) (holding disagreement with the fairness of terms, as long as the terms were followed, is not an abuse of discretion and further holding a court cannot change the terms of a plan in an ERISA § 502(a)(1)(B)). This determination is well supported by the very terms of Plaintiff's argument, which does not go so far as to say there was selective or discriminatory application or that the Trustees defined "gainful employment" arbitrarily or capriciously. These arguments do not bear on whether Defendant committed an abuse of discretion in terminating Plaintiff's DRP, but merely express a wish for the Plan to have different terms. Based on these arguments, the Court finds there was no abuse of discretion by Defendant.

Finally, Plaintiff argues she "was not informed by the Administrator that if she returned to work on modified duty (light duty work) during a 'period of trial work' that she would lose her right vested disability retirement pension." (Pl.'s Mot. for Summ. J. 15.)  Defendant counters by stating the record does not support this argument, as Plaintiff only applied for DRP after she had returned to work.  Defendant is correct. Defendant first learned Plaintiff wished to apply for a DRP in June 2016, which was almost three years after Plaintiff returned to work in August 2013.  Defendant could not have warned Plaintiff about circumstances to which it was unaware.  The Court finds this argument does not show an abuse of discretion by Defendant.

   b. <u>Whether Termination of Plaintiff's DRP by Defendant was Reasonable under the Plan</u>

Plaintiff argues that the approximately eight months that she worked for Acme after being judge disabled by the SSA and receiving SSDB was a "period of trial work."  Plaintiff argues that the trial work period did not change her disability status or entitlement to SSDB.  As a result, it was improper for Defendant to terminate the grant of DRP starting in August 2013. Defendant argues that the plain language of Article IV, Section 3 generally allows them to terminate DRP if the individual

returns to employment.  Defendant argues there is no provision for trial work within the confines of the Plan.

The Court begins by noting an obvious principle: the requirements of the SSA to qualify for disability and the requirements to qualify for a DRP under the Plan are different. While this does not mean SSA rules and regulations are totally irrelevant[6], it does mean "it is not inherently contradictory to permit an individual to recover benefits pursuant to the Social Security Act while being denied benefits pursuant to a private ERISA benefit plan."  Pokol v. E.I. Du Pont Nemours & Co., 963 F. Supp. 1361, 1380 (D.N.J. 1997).

Thus, whether Plaintiff was completing a period of trial work between August 2013 and April 2014 does not bear on the issue of whether it was proper for Defendant to terminate Plaintiff's DRP for that time period.  The Court will separately address whether this period of trial work and SSA regulations have any bearing on the requested resumption in May 2014 of Plaintiff's DRP, which was also denied by Defendant.  Three questions must be answered here: (1) under what conditions may Defendant terminate a DRP, (2) was it reasonable for the Defendant to conclude that Plaintiff satisfied these conditions,

---

[6] Obviously, because the Plan defers to the definition of disability under the Social Security Act and requires proof of a disability determination from the SSA, it is incorrect to state, as Defendant does, that SSA regulations "are simply irrelevant." (Def.'s Cross-Mtn. for Summ. J. 16.)

and (3) are there any other provisions of the Plan which would have prohibited termination in this situation.

Defendant asserts it may terminate a DRP if one of the three conditions discussed <u>supra</u> is met. Defendant asserts it was reasonable for it to conclude Plaintiff had met either subpart (a) or (b). The Court agrees. Under subpart (a), a DRP may be terminated:

> If and when the Pensioner engages in any regular gainful occupation or employment for remuneration or profit deemed significant by the Trustees under uniform nondiscriminatory rules, except for purposes of rehabilitation.

(FUND0069.) Between August 2013 and April 2014, Plaintiff engaged in (1) regular gainful employment, (2) for remuneration, and (3) it was deemed significant by the Trustees.[7] It appears from the undisputed facts that Plaintiff worked at Acme for approximately forty hours a week, except in April which was cut short by her leaving due to injury. She was paid by Acme for her work – it was not on a volunteer basis. The Trustees found this work was significant. Plaintiff has not shown that termination of her DRP under this provision was an abuse of discretion.

Although it is sufficient, based on the Court's analysis <u>supra</u>, to find no abuse of discretion by Defendant in

---

[7] The Court will not address whether the work fits within the rehabilitation portion, as not party asserts this argument.

terminating Plaintiff's DRP under subsection (a), the Court will also consider subsection (b). Under subpart (b), a DRP may be terminated:

> If and when the Pensioner has sufficiently recovered to resume his regular gainful occupation or any other employment for remuneration or profit.

(FUND0069.) A plain reading of this subsection reveals that it would be proper to terminate a DRP if an individual resumed any employment for "remuneration or profit." The separate condition of "sufficiently recovered" appears to not be a separate requirement. Instead, it appears to be satisfied when the individual resumes employment for remuneration or profit. As detailed above, Plaintiff did resume her previous position at Acme between August 2013 and April 2014, working approximately forty-hour weeks, and was paid for her services by Acme. Thus, Plaintiff has not shown that termination of her DRP under this provision was an abuse of discretion.[8]

Finally, the Court must consider whether any other portion of the Plan would in some way prohibit Defendant from

---

[8] Plaintiff also asserts that Defendant never explained that subsections (a) and (b) applied to her and was the reason for termination of her DRP. This argument is belied by the uncontested record. In the July 8, 2016 from Defendant to Plaintiff, Defendant cites both subsection (a) and subsection (b) and discusses that she "returned to regular gainful employment," language nearly identical to that contained in the subsections. (FUND0006.) This was reiterated in the September 16, 2016 letter, (FUND0026-30), and the May 5, 2017 letter, (FUND0046-47.) Under this argument, the Court finds no abuse of discretion by Defendant.

terminating a Plaintiff's DRP.  Initially, as this Court has
stated before, a 29 U.S.C. § 1132(a)(1)(B) claim only allows a
Court to enforce the terms of an ERISA plan, not change them.
Shah, 2018 U.S. Dist. 49996, at *9-10 (citing CIGNA Corp., 563
U.S. at 435-36).  Although Plaintiff is correct that the Plan
references the definition of disability found in the Social
Security Act and its implementing regulations, it does not
reference the regulations concerning a "period of trial work."
The Court cannot read those terms into the DRP provisions now.

It seems obvious that the Plan would be more comprehensive
and better anticipate potential conflicts with the Social
Security Act and its implementing regulations it if expressly
addressed how the Plan would address "period of trial work"
cases implicating 42 U.S.C. § 422(c) and the relevant
regulations.  It would certainly be a benefit to employees.  And
it also seems clear that if the Plan were written to allow – or
not disallow – DRP payments during a period of trial work a
powerful private disincentive to participate in a public program
designed to help people return to work would be eliminated.  But
that is a policy choice and, perhaps more importantly, a subject
this Court should leave to the negotiating table.  For the Court
to read such a provision into the Plan now would be to strike a
better bargain than the one reached between the union and the
employer.  That the Court cannot do.

Accordingly, the Court finds there was no abuse of discretion in terminating Plaintiff's DRP between August 2013 and April 2014 on the basis of either subsection (a) or (b).

### c. Whether Defendant Abused Its Discretion in Terminating Plaintiff's DRP after Plaintiff Ended Her Period of Trial Work

The third argument presented by Plaintiff is not whether the Plan is ambiguous or whether termination was inappropriate, but whether Plaintiff qualified for a DRP subsequent to her leaving Acme in April 2014. Plaintiff argues she still qualified for a DRP because, at the time she left Acme, she was still deemed disabled by the SSA and still received SSDB. Defendant argues Plaintiff was not qualified for a DRP because she never submitted new documents from the SSA concerning the second injury. Plaintiff counters because she was already deemed disabled, no new documents would be produced by the SSA based on the new injury.

For context, the Court restates the DRP eligibility provision from the Plan:

> A Participant who incurs a "Total and Permanent Disability" (as defined in this Section) and who has accumulated ten (10) or more years of Benefit Credit in accordance with the provisions of Article II, shall be eligible for a Disability Retirement Pension; provided, however, a Participant who incurs a "Total and Permanent Disability" (as defined in this Section) who completes one (1) or more hours of service on or after February 1, 1997 shall be eligible for a Disability Retirement Pension if such Participant has accumulated ten (10) or more years of Vesting Credit

in accordance with the provisions of Article III. A
Participant shall be considered to have sustained a
Total and Permanent Disability if he is disabled under
the definition of disability used to determine
eligibility for disability benefits under the Federal
Social Security Act and has been awarded a disability
pension under said Act. In order to establish for Plan
purposes the award of such disability pension by the
Social Security Administration, the Participant must
furnish to the Trustees a Certificate of Award from
the Social Security Administration with a Date of
Entitlement within twenty-four (24) months after the
Participant's last day worked for an Employer, and the
Participant must have been continuously disabled from
the last day of paid employment to the Date of
Entitlement stated therein. Disability shall be
considered Permanent and a Participant shall be
eligible for retirement upon the expiration of five
(5) full months following the date of disablement;
provided, however, the Participant shall not begin to
receive his Disability Retirement Pension until the
first day of the month following the expiration of six
(6) full months from his date of disablement.

(FUND0069.)[9]

The record clearly supports that Plaintiff had a "Total and
Permanent Disability" as defined by the Plan.  In May 2014,
Plaintiff was considered disabled by the SSA and was still
receiving SSDB.  Plaintiff is correct that the "period of trial
work" she completed did not change her status.  This is a
question of law, does not rely on any disputed record fact, and
may be determined easily by an examination of the appropriate
regulations.

Plaintiff was eligible to complete a period of trial work.
20 C.F.R. § 404.1592(a), (d), (e) (explaining the definition of

---

[9] There is no dispute that Plaintiff had the requisite credits.

a trial work period, that SSDB recipients are eligible, and that
the trial work period begins the month of entitlement to SSDB);
Mehalschick v. Comm'r Soc. Sec., 609 F. App'x 710, 711 (3d Cir.
2015) (acknowledging that individuals may pursue a period of
trial work under 20 C.F.R. § 404.1592, without loss of
benefits); Karlson v. Colvin, 17 F. Supp. 3d 432, 436 n.1
(D.N.J. 2014) ("Social Security Regulations allow benefit
recipients to undertake a nine-month 'trial work period' to
assess whether they are capable of engaging in substantial
gainful activity. 20 C.F.R. § 404.1592."). Under the
regulations, because Plaintiff was eligible for SSDB, she was
eligible to complete a period of trial work beginning when her
entitlement to SSDB began. Her entitlement began in June 2013
and she worked in August 2013. She satisfies 20 C.F.R. §
404.1592.

When an individual completes a period of trial work, the
individual may lose their benefits. Plaintiff did not lose her
disability status or SSDB because she did not complete a period
of trial work. That would have required Plaintiff to work nine
months within a sixty-month period, which she did not do. See 42
U.S.C. § 422(c)(4)(A) ("A period of trial work for any
individual shall end . . . [in] the ninth month, in any period
of 60 consecutive months, in which the individual renders
services (whether or not such nine months are consecutive).").

See also 42 U.S.C. § 423(a)(1)(E) ("For purposes of the preceding sentence, the termination month for any individual shall be . . ., in the case of an individual who has a period of trial work which ends as determined by application of section 422(c)(4)(A) of this title, the termination month shall be the earlier of (I) the third month following the earliest month after the end of such period of trial work with respect to which such individual is determined to no longer be suffering from a disabling physical or mental impairment, or (II) the third month following the earliest month in which such individual engages or is determined able to engage in substantial gainful activity . . . .").

As is clear, Plaintiff was eligible for a period of trial work, that period of trial work was not considered in assessing whether she suffered from a continuing disability, and she never completed the period of trial work so did not lose her disability status or SSDB. See 42 U.S.C. § 422(c)(2) ("[A]ny services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether [her] disability has ceased in a month during such period.").

Defendant did not initially find Plaintiff was completing a period of trial work and therefore erroneously concluded Plaintiff was no longer deemed disabled by the SSA and receiving

SSDB. Defendant also erroneously concluded Plaintiff did not meet the definition of "Total and Permanent Disability" under the Plan. If this was the basis for Defendant's decision to deny Plaintiff a DRP in May 2014, the Court would find it was an abuse of discretion as it was clearly erroneous.

But, this was not the basis for Defendant's decision. The basis was that Plaintiff had not presented a separate disability award from the SSA proving disability stemming from her second work-related injury. This basis for denying Plaintiff benefits is wholly unsupported in the text of the Plan. There is no provision requiring a new disability to be presented after termination of an initial grant of a DRP. The only requirements are those listed supra, in the Plan provision. This was an abuse of discretion by Defendant because it is not a requirement within the text.

The final question, therefore, is whether Plaintiff has provided proof of disability as contemplated by the text of the Plan. Plaintiff has. The Plan states:

> In order to establish for Plan purposes the award of such disability pension by the Social Security Administration, the Participant must furnish to the Trustees a Certificate of Award from the Social Security Administration with a Date of Entitlement within twenty-four (24) months after the Participant's last day worked for an Employer, and the Participant must have been continuously disabled from the last day of paid employment to the Date of Entitlement stated therein.

It appears that, at least in this case, Defendant has interpreted "Certificate of Award" not as requiring a document from the SSA entitled so, but merely as requiring an official SSA document showing entitlement to an award. Defendant granted Plaintiff DRP in July 2013 based on a document entitled "Notice of Award," so it is clear Defendant has not strictly construed this requirement. Therefore, because Plaintiff's counsel provided a document from the SSA showing Plaintiff was still entitled to SSDB and Plaintiff originally provided the Notice, Plaintiff has met this requirement.

These documents show Plaintiff was entitled to SSDB within twenty-four months of her last day of work, April 2014, because they show Plaintiff was entitled to benefits starting in June 2013 until, at least, October 25, 2016. Moreover, based on this Court's finding concerning Plaintiff's period of trial work, Plaintiff has been continuously disabled per the SSA since June 2013 and has been receiving SSDB. The Court finds Defendant's denial of a DRP was an abuse of discretion. Defendant's interpretation of the Plan's DRP provisions was wholly without reason, as it instituted requirements of eligibility that it had not previously required or that were not contained within the text of the Plan.

Accordingly, this Court grants Plaintiff's Motion for Summary Judgment because Plaintiff has shown Defendant abused

its discretion and that she was entitled to a DRP starting in May 2014.

## CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's Motion for Summary Judgment, in part, and deny it, in part. The Court will also grant Defendant's Motion for Summary Judgment, in part, and deny it, in part. The Court will instruct the parties to file a joint letter informing it of whether discovery is necessary for the issue of damages or whether briefing is appropriate.

An appropriate Order will be entered.


Date: _June 27, 2019_          _s/ Noel L. Hillman_
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.